# Supreme Court of Texas

No. 24-0081

In re Carlson,
*Relators*

On Petition for Writ of Mandamus

**Argued January 16, 2025**

CHIEF JUSTICE BLACKLOCK delivered the opinion of the Court.

Within "the elaborate minefield of modern administrative procedure," the "finality of agency-level decision-making and the availability and timing of judicial review can be difficult questions even for lawyers to get right." *Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 269 (Tex. 2019) (Blacklock, J., concurring). In an ideal world, Texans would always know with certainty exactly how to appeal an adverse ruling from a state agency. And in an ideal world, Texans who seek guidance on that question from their government could confidently rely on the answer. We do not live in that ideal world, as evidenced by the need in 2019 for this Court's decision in *Mosley v. Texas Health and Human Services Commission*. *Id.* at 268 (vindicating the due-process claim of a woman who followed the government's

instructions "only to be informed that in so doing she had failed to exhaust her administrative remedies and was not entitled to judicial review").

The relators in this mandamus action, the Carlsons, found themselves in a predicament similar to Mosley's. They were directed by the government to follow a certain path toward judicial review but were later told they made a mistake by following that path and thereby forfeited their right to have a court review the adverse administrative decision. The Carlsons maintain that the government's initial instruction was correct, that they correctly followed it, and that their contested case should proceed down that path toward judicial review. The State has adamantly opposed that outcome at every step—until just a few weeks ago. After nearly two years of litigious wrangling, culminating in merits briefing and oral argument in this Court, the State has reversed course altogether. It has consented, at least as to the Carlsons, to adopt the Carlsons' approach to the administrative-procedure question raised by this case. And it has now agreed, in the spring of 2025, to move the Carlsons' contested case toward judicial review along the path the Carlsons first sought to travel in the summer of 2023.

We hold that the State's reversal of position makes this mandamus action moot and therefore beyond our jurisdiction to decide. The Carlsons agree. While they cannot get the last year and a half back, it appears they will at last get the judicial review the law offers them. Because the dispute between the parties no longer exists, we dismiss the

petition as moot, a disposition that is without prejudice to the Carlsons' ability to again seek relief in this Court if necessary.

## I.

The Private Real Property Rights Preservation Act (PRPRPA)—Chapter 2007 of the Government Code—authorizes a property owner to "file a contested case with a state agency to determine whether a governmental action of the state agency results in a taking under this chapter." TEX. GOV'T CODE § 2007.022(a). These contested cases are "subject to Chapter 2001," the Texas Administrative Procedure Act (APA), "except to the extent of a conflict with [the PRPRPA]." *Id.* § 2007.022(c). After the contested case, the property owner has a right of appeal to district court. *Id.* §§ 2001.171, 2007.025(b).

In 2022, Tom and Becky Carlson filed a contested case against the Comptroller under the PRPRPA. They alleged that the Comptroller's approval of a wind turbine project in Callahan County resulted in a taking because it diminished the value of their property and their enjoyment of the land. The Comptroller referred the contested case to the State Office of Administrative Hearings (SOAH). At SOAH, the Comptroller moved to dismiss the Carlsons' case as untimely filed. The SOAH Administrative Law Judge (ALJ) agreed with the Comptroller, stating:

> The ALJ concludes Petitioners failed to timely file the contested case in accordance with the requirements of the Act. Therefore, for the reasons stated, the ALJ finds that the Comptroller and/or SOAH do not have jurisdiction under [sic] to conduct a contested case hearing in this matter under the provisions of the Act. It is therefore **ORDERED** that this case is **DISMISSED** for lack of jurisdiction under 1 Tex. Admin. Code § 155.503(d)(1)(A).

3

State Off. of Admin. Hearings, *Order Granting Motion to Dismiss*, Docket No. 304-23-07703 (May 19, 2023).

The ALJ signed this Order on May 19, 2023.  On June 6, 2023, the Carlsons—in an admirable but ultimately fruitless effort to avoid the procedural morass in which they later found themselves—asked SOAH whether the Order was a final decision subject to appeal:

> The language in the order appears to be a final decision; that is, there is no language indicating what ALJ Moore expects to subsequently happen in the case.  To be clear, there is no language in the ALJ's order reflecting the need for the agency to issue a subsequent order from which the Petitioner might appeal under the APA.
>
> My reading of the APA and SOAH Rules provide no guidance on the current state of the case.  The procedural vehicle through which ALJ Moore issued his order is not covered by SOAH Rule 155.503.  Does his dismissal order contemplate the remand of this matter back to the agency for a final order?

Relators' Pet. App. Tab 5. Email thread to SOAH re: status of case at 2, *In re Carlson*, No. 24-0081 (Tex. Jan. 30, 2024).  SOAH's general counsel replied on June 8 that SOAH's Order was not a final decision and that the case would be returned to the Comptroller for a final decision:

> I think what you are asking is for guidance on where to go next if you want to continue the dispute.  All cases referred by the Comptroller are PFD cases, so the case goes back to the CPA now for any further action, (final order, motion for rehearing, etc.)
>
> SOAH only has final decision authority for a very limited number of case types . . . .

*Id.* at 1.  Relying on this guidance, the Carlsons waited for the Comptroller to act on what they understood to be the ALJ's proposal for

4

decision. Having heard nothing, the Carlsons contacted the Comptroller on July 26 to see if it intended to issue a final order. The Comptroller initially replied, "You will have the Order within the next couple of days." Relators' Pet. App. Tab 6. Email thread requesting entry of final order at 5, *In re Carlson*, No. 24-0081 (Tex. Jan. 30, 2024). That did not happen. The next day, the Comptroller sent another email:

> After further review and consideration of the assertions made in your July 26 email, we believe they are in error.
>
> The ALJ issued a **FINAL** SOAH "Order Granting Motion to Dismiss" in the Carlson case (SOAH Docket Number 304-23-07703). The Order grants the Motion to Dismiss because **neither the Comptroller nor SOAH has jurisdiction** under 1 Texas Administrative Code § 155.503 (d)(1)(A).
>
> This provision authorizes the ALJ to dismiss a case from SOAH's docket because of the "lack of jurisdiction over the matter by the referring agency." Because our Agency lacks jurisdiction over the matter, there is no justification for issuing an Order or Comptroller decision relating to the Carlson case.
>
> Given the unambiguous language set out in the ALJ's Order, we believe an appeal by the Petitioner's would fall under SOAH Rule 155.509(b). This Rule requires the Petitioner's to timely file a Motion for Rehearing of the ALJ's Order under Gov't Code Chapter 2001, Subchapter F.

*Id.* at 4. When the Carlsons informed the Comptroller of SOAH's view that SOAH lacked authority to issue a final order in their case, the Comptroller replied, "We are going to stand upon the SOAH Order as issued." *Id.* at 1. That position, now abandoned at the eleventh hour, gave rise to this mandamus action.

The Carlsons filed a mandamus petition directly in this Court.[1] They sought only to compel the Comptroller to issue a final order, from which they could appeal to district court. We called for merits briefing and set the case for argument. At argument, the State continued to defend the Comptroller's position that the SOAH ALJ's order was the final, appealable decision in the contested case and that the Carlsons had missed the deadline to appeal that decision by waiting for the Comptroller to issue a final decision. Because the Comptroller's position conflicted with SOAH's position as reflected in SOAH's communication with the Carlsons, the Court asked the State to advise the Court on whether SOAH continues to disagree with the Comptroller or whether the State had come to a unified position.[2] The State indicated it would do so by letter.

The Court did not receive such a letter. Instead, the State informed the Court, on February 21, that the Comptroller, on February 14, suddenly issued the final decision the Carlsons had been seeking for the last twenty months. The State's letter did not indicate whether the Comptroller's legal position on the finality question had changed. Nor did the letter indicate how the Comptroller's issuance of a final decision could be squared with its previous position, reaffirmed just a month

---

[1] "This Court has exclusive jurisdiction to mandamus the Comptroller, as an executive officer of the State, and thus [a] mandamus action must be filed as an original proceeding here." *In re Lester*, 602 S.W.3d 469, 472 (Tex. 2020) (citing TEX. GOV'T CODE § 22.002(c)). The State has not contested this point.

[2] "The Attorney General shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party . . . ." TEX. CONST. art. IV, § 22.

earlier in this Court, that it could not issue a final decision because SOAH had already done so. The State's letter did, however, contend that the Comptroller's action extinguished the controversy between the parties, mooting the Carlsons' mandamus petition. We sought the Carlsons' input on the mootness question, and they agree the case is moot because the Comptroller's change of course has now afforded them all the relief they sought.

## II.

The parties are correct that the Comptroller's issuance of a final decision extinguishes the dispute that gave rise to this mandamus petition, which is now moot. Despite the regrettable lack of clarity in the law that remains in the wake of the government's shifting positions, a court's job is to resolve genuine disputes between parties about their legal rights, not to resolve abstract questions about legal rights when a genuine dispute no longer exists. Resolution of ambiguity in the law is often a welcome consequence, we hope, of our resolution of disputes between parties. But our desire to resolve ambiguity in the law does not give us the power to do so. Only a genuine controversy between parties gives us that power, the judicial power, which is the power to resolve disputes. Because no such dispute remains, we are obliged to dismiss the mandamus petition as moot. *See Tex. Dep't of Fam. & Protective Servs. v. N.J.*, 644 S.W.3d 189, 192 (Tex. 2022) ("A case is moot when a justiciable controversy no longer exists between the parties or when the parties no longer have a legally cognizable interest in the outcome.").

For these reasons, the petition for writ of mandamus is dismissed for lack of jurisdiction.

7

_____
James D. Blacklock
Chief Justice

**OPINION DELIVERED:** April 25, 2025